**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------  X
ALICE GRIFFIN,                                                       :    Index No.
                                                                     :
                        Plaintiff,                                   :    **COMPLAINT**
                                                                     :
                     – against –                                     :
                                                                     :
WASHINGTON MUTUAL, INC.,                                             :
WMI LIQUIDATING TRUST, individually and as agent                     :
for Washington Mutual, Inc., and                                     :
MR. COOPER GROUP INC.,                                               :
                                                                     :
                       Defendants.                                   :
                                                                     :
-------------------------------------------------------------------  X
```

Plaintiff, Alice Griffin, appearing pro se, brings this action for declaratory, injunctive, and other relief.  The allegations set forth herein are based on Plaintiff's personal knowledge and on information and belief, including information provided to Plaintiff from credible sources and her review of publicly available information.  She alleges as follows:

<u>**Nature of the Action**</u>

1.    Plaintiff owns legacy preferred stock interests issued by former Chapter 11 debtor Washington Mutual, Inc. ("WMI") pursuant to its plan of reorganization (the "Plan").  For two years Plaintiff has fought WMI's claims' adjudication agent, the WMI Liquidating Trust (the "Trust") to prevent a post-confirmation claim of certain securities underwriters from diluting her interests, persistently arguing that the Plan forbids dilution of preferred equity.  Plaintiff's objection has been rejected by three federal courts and Plaintiff is preparing a writ of certiorari for the United States Supreme Court (the "Supreme Court").

Case 1:22-cv-02253  Document 1  Filed 03/18/22  Page 1 of 26

2.    Plaintiff brings the instant action at this time because she has been credibly informed that Defendant Mr. Cooper Group Inc. ("Mr. Cooper") will distribute equity in itself to holders of WMI legacy interests ("Legacy Holders"; each, a "Legacy Holder") in consideration for assets belonging to either WMI or the Trust in the possession of, and forthcoming to, Mr. Cooper.  If such equity is distributed prior to final adjudication of Plaintiff's appeal the appeal will probably be mooted as any distribution may be irretrievable.

3.    There are several issues besides the question of whether WMI's legacy preferred equity can be diluted requiring adjudication regardless of the outcome of Plaintiff's certiorari petition.  These and other matters must be resolved before any Mr. Cooper equity is disbursed.

**The Parties**

4.    Plaintiff is a citizen of New York.  Defendant WMI was, as of 2015, a Washington corporation with its principal place of business in Seattle, Washington.  Defendant the Trust is a Delaware statutory trust, and Plaintiff proceeds against it in its individual capacity, and as agent for Washington Mutual, Inc.  Defendant Mr. Cooper is a Delaware corporation with its principal place of business in Coppell, Texas.

**Jurisdiction**

5.    Plaintiff brings this action under 28 U.S.C. § 1332(a)(1) as there is complete diversity between herself and all defendants, and the amount in controversy exceeds $75,000.  Venue is proper pursuant to 28 U.S.C. § 1391 (b)(3) because Mr. Cooper is subject to this court's personal jurisdiction under N.Y. C.P.L.R. § 302(1), (3)(i), and (3)(ii) due to its (a) myriad contacts with New York City, (b) involvement in interstate commerce, and (c) tortious interference with Plaintiff's right to fully adjudicate her appeal and dilution limit.

6.     Mr. Cooper has more than minimal contacts with New York.  Its involvement with New York includes its transactions with New York City residents, solicitation of business from New York City residents through paid advertising, and upon information and belief, the substantial revenue Mr. Cooper derives from New York represents interstate commerce between New York and Texas, its domicile.

7.     Upon information and belief, pursuant to an agreement with WMI or its agents, Mr. Cooper is in possession of, and maintains control over, property owned by WMI or the Trust in which Plaintiff and thousands of Legacy Holders all over the United States and internationally have interests.

8.     As described herein, Plaintiff has received credible information that Mr. Cooper intends to use said property to capitalize itself and will pay for said property by issuing equity in itself to Legacy Holders.

9.     If Mr. Cooper issues equity to Legacy Holders before Plaintiff (a) adjudicates the claims described herein and (b) exhausts her federal appeal, not only will her (i) federal appeal and (ii) contractual right to 1% maximum dilution of her preferred interests be impaired, but the right of thousands of Legacy Holders – some of whom are located in New York to, *inter alia*, avoid dilution or at least limit it, be irretrievably lost.  Upon information and belief, Mr. Cooper – in complicity with WMI – is poised to issue the equity and understands Plaintiff and other Legacy Holders could be injured by its actions.

10.    As a party to said agreement and through its performance in respect thereto – i.e., its distribution of equity to Legacy Holders – Mr. Cooper tortiously interferes with Plaintiff's and other Legacy Holders' rights to have the claims asserted herein fully adjudicated, rights

that have a direct bearing on the proportion of Mr. Cooper equity eventually allocated among Legacy Holders and other matters.

11. Accordingly, Mr. Cooper should reasonably expect its performance under said agreement to have consequences in New York and to convey general jurisdiction unrelated to its normal business of mortgage lending and servicing.

12. In light of the foregoing, this court's exercise of general jurisdiction over Mr. Cooper comports with constitutional due process principles of fair play and substantial justice, and Mr. Cooper's extensive contacts with New York render it unable to make a compelling case that the presence of some other considerations would render jurisdiction of this court unreasonable.  *See Johnson v. UBS AG*, 791 F.App'x 240, 242 (2d Cir. 2019) (quoting *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016); *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 – 165 (2d Cir. 2010).[1]

## **Background**

13. The Plan was confirmed on February 28, 2012.  Pursuant to its terms, the Trust was formed to adjudicate claims and distribute assets in which WMI did not retain an ownership interest.

14. On March 28, 2013, the Trust executed a stipulation (the "Stipulation") settling ligation with fifteen banks who had sued WMI for indemnification under securities underwriting agreements (the "Underwriters"). The Stipulation granted the Underwriters a $72 million claim (the "Claim") in the preferred class of WMI's waterfall ("Class 19").   This Stipulation was the only stipulation of about 47 for which the Trust did not seek court

---

[1] If this court deems the causes of action herein related to reimbursement of Class 19 by Class 22 are unripe due to Plaintiff's federal appeal, Plaintiff seeks leave to amend its complaint to refile those claims after its federal appeals are fully exhausted.

approval despite the Stipulation requiring court approval by its own terms.  Further, it was not disseminated, only noticed in a 10-K for the *previous* year and by a 10-Q.  No 8-K was filed though the Trust was a Securities and Exchange Act ("'34 Act") reporting entity.

### The Effects of the Claim

15. As members of Class 19 the Underwriters received (a) 1.4 million shares of common stock in WMI Holdings Corp. ("WMIH"; now Mr. Cooper) and (b) $72 million face in Class 19 (which has a combined face of $7.5 billion).  The 1.4 million shares of WMIH common equate to approximately 120,000 shares of Mr. Cooper common stock due to a 12/1 reverse split ("Mr. Cooper Stock") with an approximate market value as of this date of $4 million.

16. On April 22, 2019 Plaintiff's objection to the Stipulation (the "Objection") was denied by a bench ruling of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on the basis of laches raised by that court *sua sponte*.  Plaintiff's subsequent appeals to the United States District Court for the District of Delaware (the "District Court") and the United States Court of Appeals for the Third Circuit (the "Third Circuit") affirmed the Bankruptcy Court.  The jurisdiction of the three aforementioned federal courts has terminated, and none of the claims or issues underlying Plaintiff's petition before the Supreme Court are raised in the instant action.

17. The Objection was based on the Plan's unambiguous language requiring claims for securities' underwriting liability be placed within common, not preferred, equity. Specifically, Section 1.153 of the Plan, entitled 'Other Subordinated Claim' ("Section 1.153"), provides that "any Claim related to the purchase or sale of an equity security that is subordinated in accordance with section 510(b) of the Bankruptcy Code shall be

classified with and receive the treatment provided for the Preferred Equity Interests or Common Equity Interests, as appropriate."

18. Notwithstanding Section 1.153's language that a claim related to issuance of equity securities can be classified as either preferred or common equity, Section 1.73(b) of the Plan, entitled 'Common Equity Interest' limits Section 1.153 by requiring claims relating to issuance of equity securities be compensated with common equity and further specifies the methodology for calculating the amount of common equity.[2]   Accordingly, pursuant to Section 1.73, WMI's common equity ("Class 22"), when it voted for the Plan, agreed to accept responsibility for any claims arising from sales of WMI's equity securities.

19. In accordance with Section 1.73(b), the Trust was required to determine the number of *Class 22 interests* payable to the Underwriters by dividing $72 million by the price of WMI common stock on:  (a) September 26, 2008, (b) September 25, 2008, (c) December 12, 2011; or (d) a price set by the Bankruptcy Court.

20. Instead of complying with Section 1.73(b), the Trust gave the Underwriters Class 19 interests, which, as previously explained, entitled them to (a) approximately 120,000 shares of Mr. Cooper Stock, which they received, and (b) a portion of Class 19's 75% share of any recovery.  (Pursuant to the Plan, Class 19 and Class 22 are *pari passu*, and Class 19 receives 75% of any recovery and Class 22 receives 25% thereof.)

---

[2] Specifically, Section 1.73(b) provides that the amount of an allowed claim must be divided by one of four (4) denominators:  "a Claim . . . which . . . has been subordinated to the level of Equity Interest in accordance with section 510 of the Bankruptcy Code . . . shall be determined by dividing the amount of an Allowed Claim by the per share price of WMI common stock as of either (a) the Petition Date, (b) the close of business on the day immediately preceding the Petition Date, (c) December 12, 2011, or (3) [sic] such other date as determined by the Bankruptcy Court."

### The MBS

21.    In late 2019 Plaintiff received information from another Legacy Holder in communication with an employee of a major securities broker (the "Source").  The Source stated that when Plaintiff's federal appeals are finally adjudicated and the Trust dissolved,[3] Mr. Cooper will distribute Mr. Cooper Stock to Legacy Holders.  The Source stated that defendant Mr. Cooper is in possession of approximately $550 billion in mortgage-backed securities and/or mortgages owned by WMI or the Trust (the "MBS") which assets are subject to interests of Plaintiff and other Legacy Holders.

22.    In early April 2021 the Source stated that all the MBS would be given to Mr. Cooper by June 30, 2021 and that the Mr. Cooper Stock disbursed by various brokers.  The Source further said that Mr. Cooper was obligated to report receipt of the MBS in its '34 Act filings in the same quarter as the date of receipt but did not do so while Plaintiff's Third Circuit litigation with the Trust survived and is planning to disburse the Mr. Cooper Stock regardless of the Final Decree.  The Source was told that:  "Griffin will be surprised."  The Source indicated that Mr. Cooper's management was very anxious about fulfilling its '34 Act regulatory reporting requirement with respect to the MBS.  The Source also indicated that the value of the MBS had increased to about $600 billion.[4]  (The current value is unsurprising given the total MBS retained by WMI in its securitizations through 2008 totaled approximately $135 billion according to archived WMI '34 Act filings.)[5]  Further,

---

[3] Pursuant to the final decree closing WMI's chapter 11 case dated December 20, 2019 (the "Final Decree"), the Trust is prohibited from dissolving until Plaintiff's appeals are exhausted.

[4] To illustrate the impact of the MBS, for each $10 billion recovered each Class 19 security receives par and each Class 22 security receives approximately $2.10.  Therefore, by Plaintiff's estimate the $600 billion in MBS would provide as much as 60x par to each Class 19 security and approximately $125 per Class 22 security, both payable in Mr. Cooper Stock.

[5] During her appeal before the District Court Plaintiff reviewed WMI's '34 Act filings from inception of its mortgage securitization scheme until the end of the last reporting quarter before its two banking entities were seized by the

the Source stated that in addition to the Mr. Cooper Stock, Legacy Holders will contemporaneously receive a cash payout of 2.5x par.

23. The Source further revealed that circulating within his/her enterprise was an internal memorandum listing the names of Legacy Holders, their holdings, and indicating these persons would be treated as private wealth clients rather than retail clients once they received the Mr. Cooper Stock.

### Advent of the MBS Requires Protection of Plaintiff's WMI Legacy Interests

24. Plaintiff has no reason to doubt the veracity of the Source, whose information is unchanged during the more than two years that the Source has been disseminating information in connection with the matters stated herein. Assuming the source is correct about the MBS and its value being $600 billion, then the portion of same belonging to Class 19 is $450 billion and the value of the Claim is $4.32 billion.[6]

25. Accordingly, Class 22's reimbursement obligation to Class 19 is at least $4.32 billion and very likely more as Mr. Cooper is a going concern and its stock will appreciate. As Class 19's claim for reimbursement arose from the Claim, and the Claim arose from securities' underwriting, giving Class 19 interests in Class 22 would not violate the Plan.

26. No information about the existence or whereabouts of the MBS has been provided by WMI to Plaintiff or other retail Legacy Holders. Retail Legacy Holders – who are entitled to

---

Federal Deposit Insurance Corporation (the "FDIC"). Taking the Source's information about the current $600 billion value as correct, very likely organic growth from coupons over 13 years and compensation for depriving WMI of this property for the same period would account for the four-fold rise in value. These assets did not appear on WMI's bankruptcy schedules and upon belief they were probably seized by the FDIC and returned when it was established that did not belong to WMI's former banking entities.

[6] The quotient of $72 million divided by $7.5 billion (the total value of preferreds' face) is .0096, which, multiplied by $450 billion means the Claim will receive $4.32 billion in Mr. Cooper equity.

30% of any recovery – were neither informed nor consulted about the transaction with Mr. Cooper.

27.    As disclosed during the bankruptcy case, Appaloosa Management LP ("Appaloosa") holds $850 million in Class 19 interests and Greywolf Capital Management, LP ("Greywolf") holds approximately $875 million in Class 19 interests.  These two funds represent 8.5% and 8.75% of the total $10 billion face, respectively.  Therefore, if the value of the MBS is correctly stated at $600 billion, then Appaloosa and Greywolf will receive $50 billion and $52.5 billion in Mr. Cooper Stock, respectively.   During the case Owl Creek Asset Management, L.P., Centerbridge Partners, L.P., and Aurelius Capital Management, LP. (collectively, with Appaloosa, the "Hedge Funds") were revealed as holding substantial Class 19 interests.

28.    It was also revealed during the bankruptcy case that the Hedge Funds negotiated the settlement with the FDIC and J.P. Morgan Chase that served as the foundation for the Plan and appointed the Trustee.  Accordingly, it is Plaintiff's belief that the Hedge Funds probably negotiated the sale of the MBS to Mr. Cooper, which transaction was effected without informing Plaintiff or other similarly situated retail Legacy Holders.  If so, they know the whereabouts, character, and extent of the MBS and any other property of WMI (collectively, the "the WMI Property").

### FIRST CAUSE OF ACTION
### DECLARATORY JUDGMENT THAT IF THE CLAIM IS UPHELD THE PLAN REQUIRES CLASS 22 TO REIMBURSE CLASS 19 FOR THE FULL DILUTIVE EFFECT OF THE CLAIM

29.    Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 28 above as if fully set forth herein.

30.     In the federal actions Plaintiff sought to (a) disallow the Claim in its entirety, or (b) move

the Claim out of Class 19.  In the instant action Plaintiff seeks (1) to obtain reimbursement

from Class 22 as the Plan requires or (2) declaratory relief that another Legacy Holder may

pursue reimbursement.  Accordingly, as by this action Plaintiff seeks neither to disallow

the Claim nor remove the Underwriters from Class 19, the Underwriters are not named as

parties in the instant action and are disinterested in its outcome.

31.     A declaratory judgment that the Plan requires Class 22 to reimburse Class 19 would be

unaffected by any Supreme Court decision as the liability of Class 22 is not before that

court.  Further the requested relief merely (a) interprets the Plan and (b) would only

mandate reimbursement if the Claim is upheld.  Nothing requested herein limits the

remedies available to the Supreme Court.

32.     The Third Circuit's decision to uphold violation of the Plan's anti-dilution protection for

Class 19 does not nullify Class 22's obligation (that Class 22 voted to accept) to absorb

claims arising from WMI's security issuances.  By forcing Class 22 to indemnify Class 19

this court merely enforces the original terms of the Plan, which (a) is a contract WMI made

with its creditors to secure their approvals and releases of their claims, and (b) became

immutable by operation of law 180 days after confirmation.  *See* 11 U.S.C. § 1144.  Finally,

Plaintiff has a right to enforce the agreement governing her Legacy Holdings.

33.     Accordingly, if Class 22 does not reimburse Class 19 for (a) the full value of Claim and (b)

the replacement value of the Mr. Cooper Stock, the Trust will have failed to enforce Class

22's obligations under the Plan and that is a separate matter from the federal court rulings

that the Underwriters shall remain in Class 19.

34.     Therefore, Plaintiff requests declaratory relief that the Plan requires Class 22 to reimburse

Class 19 for the full dilutive effect of the Claim as if the dilution had not occurred.

**SECOND CAUSE OF ACTION**
**DECLARATORY JUDGMENT THAT THE PLAN**
**REQUIRES CLASS 22 TO REIMBURSE CLASS 19 FOR THE FAIR MARKET VALUE**
**OF 1.4 MILLION SHARES OF REORGANIZED WMI (APPROXIMATELY**
**120,00 SHARES OF MR. COOPER STOCK)**

35.     Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 34 above as if

fully set forth herein.

36.     As set forth in Paragraph 31 herein, the requested declaratory relief would only mandate

reimbursement if the Claim is upheld.

37.     Therefore, Plaintiff requests an order declaring that Class 22 must reimburse Class 19 for

the fair market value of the 120,000 shares of Mr. Cooper Stock if the Claim is upheld by

the Supreme Court.

**THIRD CAUSE OF ACTION**
**DECLARATORY JUDGMENT THAT IF PLAINTIFF IS BARRED BY**
**RES JUDICATA OR COLLATERAL ESTOPPEL FROM SEEKING**
**REIMBURSEMENT FROM CLASS 22 FOR THE (1) FULL DILUTIVE EFFECT**
**OF THE CLAIM AND (2) FAIR MARKET VALUE OF APPROXIMATELY**
**120,000 SHARES OF MR. COOPER STOCK, OTHER MEMBERS OF CLASS 19**
**ARE NOT (A) IN PRIVITY WITH PLAINTIFF AND (B) THEREFORE NOT**
**BARRED FROM SEEKING SUCH RELIEF**

38.     Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 37 above as if

fully set forth herein.

39.     Plaintiff contends that (a) res judicata and collateral estoppel do not bar the relief requested

herein and (b) those doctrines are not relevant as Plaintiff's appeal is not exhausted, and

therefore the matters underlying the appeal are not finally determined for purposes of res

judicata or collateral estoppel.  However, even if res judicata and/or collateral estoppel bar

Plaintiff from seeking reimbursement from Class 22  in none of the litigation in the federal

courts did any Legacy Holder join Plaintiff, so, therefore, no other member of Class 19 is

in privity with Plaintiff and another member of Class 19 can sue the Trust for such indemnification.

40.   Therefore, Plaintiff requests declaratory relief in the form of an order stating no other member of Class 19 is in privity with Plaintiff and that any other member of Class 19 may bring an action for indemnification from Class 22.

**FOURTH CAUSE OF ACTION**
**DECLARATORY JUDGMENT THAT CLASS 19 HAS**
**THE RIGHT TO CONFIRMATION THAT THE TRUST DISTRIBUTED**
**THE CLAIM PRO RATA AMONG CLASS 19 CUSIPS**

41.   Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 40 above as if fully set forth herein.

42.   Section 1.175 of the Plan, 'Pro Rata Share', requires that the Claim be distributed among Class 19 pro rata so that the approximately one percent (1%) burden of the Claim (i.e., $72 million out of $7.5 billion total preferreds' face) be imposed proportionately among each of the three (3) types of preferred securities.

43.   There are eight (8) varieties of preferred securities with eight (8) corresponding Committee on Uniform Securities Identification Procedures ("CUSIP") numbers.  Six of the CUSIP numbers belong to the trust preferred securities ("TPS"), and the other two CUSIPs correspond to the Series R securities ("Series "R) and Series K securities ("Series K"), respectively.

44.   The Series R securities' face of $3 billion (each of the 3 million Series R securities has a $1,000 face) comprises 40% of the total preferred face of $7.5 billion, and therefore the Underwriters should have received no more than 40% of the Claim in Series R interests.

45.   The Series K securities' face of $500 million (each of the 20 million Series K securities has a $25 face) comprises 7% of the total preferred face, and therefore the Underwriters should have received no more than 7% of the Claim in Series K interests.

46.   The TPS' face of $4 billion comprises 53% of the total preferred face, and therefore the Underwriters should have received no more than 53% of the Claim in TPS interests.

47.   Further, the six CUSIPs comprising the TPS (including their original face values) are as follows:

   (a)   93934WAA3 ($1,250,000,000 is 31.25% of the TPS face, and equals 16.7% of the Claim);
   (b)   93934VAA5 ($302,300,000 or 7.56% of the TPS face, and equals 4.03% of the Claim);
   (c)   G9463GAA6 ($447,700,000 or 11.19% of the TPS face, and equals 5.97% of the Claim);
   (d)   93935JAA1 ($500,000,000 or 12.5% of the TPS face, and equals 6.67% of the Claim);
   (e)   93935RAA3 ($500,000,000 or 12.5% of the TPS face, and equals 6.67% of the Claim); and
   (f)   93936TAA8 ($1,000,000,000 or 25% of the TPS face, and equals 13.33% of the Claim).

   Accordingly, the Underwriters should have received no more of each TPS CUSIP than the corresponding Claim allocations set forth in the previous sentence.

48.   Moreover, of the estimated $4.32 billion coming to the Underwriters, the pro rata burden of the Underwriters among Class 19 should be as follows: (1) the TPS' share, $2.29 billion; (2) Series R's share, $1.728 billion; and (3) the Series K share, $302.4 million.

49.   Plaintiff pointed out to the Third Circuit that there was no evidence that the Claim was allocated pro rata.  The Third Circuit refused to consider that issue because it had not been raised before the Bankruptcy Court.  Plaintiff is not collaterally estopped to seek a declaratory judgment that the Plan requires pro rata allocation of the Claim among all Class 19 interests because the issue was not litigated and its resolution was not necessary to the

questions whether (a) the Claim would be disallowed or (b) if allowed, it would remain in Class 19.

50. Contract law (the Plan is a contract WMI made with its creditors binding itself, the Trust, and their respective agents), equity, and good conscience require that each holder of a Class 19 interest know if its dilution exceeded 1%, and if the Trust did not apportion the Claim pro rata as required then Class 19 members who suffered excessive dilution are entitled to reapportionment of the Claim.  To illustrate, if the MBS is worth $600 billion and the entire Claim was placed among Series R then each Series R share would lose $1,500 or 2.5% to the Underwriters rather than $600 or 1% (i.e., with a recovery of $600 billion, each Series R would be allocated 60 times par or $60,000, and should be reduced by no more than $600 (1%)).

51. The entirety of the Claim could have been placed among the TPS or Series R, only, because approximately $360 million in TPS and $500 million in Series R securities, respectively, did not execute the releases necessary to qualify for legacy WMI interests.  (The Claim -- $72 million -- could not be absorbed solely by Series K as only $46 million in Series K interests failed to release.)[7]

52. Plaintiff has requested assurances from the Trust that the Claim was distributed pro rata but those requests have been ignored.  If the Claim was not disbursed pro rata among all eight CUSIPs then  holders of some preferred equity securities may sustain up to 250% more dilution than the 1% all preferred will suffer if the pro rata requirement is followed.

---

[7] While the Claim could have been placed exclusively among the TPS, Plaintiff, who holds only Series R interests, lacks standing to inquire if that was done because she holds no TPS interests.

This result would be a clear violation of the Plan and grossly unfair to any members of Class 19 whose interests are diluted by more than 1%.

53. Wherefore, Plaintiff requests a declaratory judgment requiring defendants to disclose to Plaintiff and other members of Class 19 the portion of the Claim placed in each of the preferred CUSIPs.

**FIFTH CAUSE OF ACTION**
**DECLARATORY JUDGMENT THAT NO MEMBER OF CLASS 19 MAY SUFFER**
**MORE THAN 1% OF DILUTION FROM THE CLAIM**

54. Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 53 above as if fully set forth herein.

55. If the Supreme Court denies Plaintiff's certiorari petition or grants it but rules for the Trust and the Underwriters, Plaintiff will have exhausted all her appeals and the Claim will remain in Class 19.

56. However, even if the Claim remains in Class 19 the Plan's definition of 'Pro Rata' requires distribution of the Claim according to the weights set forth in Paragraphs 44 – 47 herein. Distributing the Claim in accordance pro rata results in no more than 1% dilution for each of the three types of securities comprising Class 19.

57. Therefore, Plaintiff requests that this court enter an order declaring that if the previous distribution of Class 19 interests did not comport with the definition of Pro Rata, then the Trust must replace Class 19 interests currently held by the Underwriters with all three (3) varieties of Class 19 interests in sufficient quantities of each to comply with the Pro Rata definition.

**SIXTH CAUSE OF ACTION**
**INJUNCTION FORBIDDING ANY PAYMENT TO CLASS 22**
**UNTIL THE FULL DILUTIVE EFFECT OF THE CLAIM IS KNOWN**

58.    Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 57 above as if fully set forth herein.

59.    If any recovery is distributed to Class 22 before the full dilutive effect of the Claim is ascertained, there may be insufficient Class 22 assets to make Class 19 whole.

60.    Accordingly, to protect Class 19, all payments earmarked for Class 22 should be escrowed until the full dilutive effect of the Claim is ascertained.

61.    Therefore, Plaintiff requests an order, without requiring posting of a bond, forbidding WMI, the Trust, Mr. Cooper, or their agents or affiliates from making any distribution(s) to Class 22 without leave of court.

**SEVENTH CAUSE OF ACTION**
**UNJUST ENRICHMENT AGAINST MEMBERS OF CLASS 19**
**WHOSE CUSIPS WERE NOT AMONG THOSE GIVEN TO THE UNDERWRITERS**

62.    Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 61 above as if fully set forth herein.

63.    If this court finds there is no right of reimbursement from Class 22, if any member of Class 19 who has sustained in excess of 1% dilution is not reimbursed for such excess dilution, then members of Class 19 who have sustained less than 1% dilution will be unjustly enriched because the Claim will not have been distributed pro rata within Class 19.

64.    Plaintiff contends that the Hedge Funds must bear their proportionate share of the dilution. They own almost exclusively TPS and very few retail Legacy Holders own them.  If the

Claim was put only in Series R, the Hedge Funds would have suffered no dilution and are therefore unjustly enriched.[8]

65.    Wherefore, Plaintiff prays for an order requiring the Trust to confirm that the Claim was distributed pro rata among Class 19 interests, and if this was not done there was unjust enrichment, and the Trust must redistribute the Claim pro rata among Class 19.

## EIGHTH CAUSE OF ACTION
## UNJUST ENRICHMENT AGAINST CLASS 22

66.    Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 65 above as if fully set forth herein.

67.    If this court determines that Class 19 is entitled to reimbursement for the entirety of the Claim, then Class 22 has been unjustly enriched.

68.    Wherefore, Plaintiff prays for an order requiring the Trust to disgorge as much of  Class 22's recovery as necessary to compensate all members of Class 19 for the full dilutive effect of the Claim as if the dilution had not occurred.

## NINTH CAUSE OF ACTION
## DECLARATORY JUDGMENT THAT THE TRUST,
## THE TRUSTEE, AND/OR THE TRUST ADMINISTRATORS
## WERE FIDUCIARIES TO CLASS 19 MEMBERS WHEN THE STIPULATION
## WAS EXECUTED AND REMAIN FIDUCIARIES TO CLASS 19

69.    Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 68 above as if fully set forth herein.

70.    Until 2020, the Trust was managed by a trustee (the "Trustee") and a trust advisory board (the "TAB") and since February 2020 it has been managed by two (2) trust administrators (the "Trust Administrators").  The Trustee was authorized to litigate and settle claims

---

[8] Accordingly, if the Claim was placed exclusively among Series R interests then after reapportion to burden the TPS with its pro rata share of 53% of the Claim, Appaloosa's and Greywolf's losses to the Underwriters will be $500 million and $525 million, respectively.

against WMI, and settlement of any claim in excess of $2 million would require approval of the TAB, and so the TAB approved the Stipulation.

71.    At the time the Stipulation was executed the Trust, the Trustee, and the TAB owed fiduciary duties to Plaintiff and other members of Class 19 as expressly set forth in the 'WMI Liquidating Trust Agreement' dated March 5, 2012.

72.    By letter dated March 4, 2021, Marcos Ramos, Esq. of Richards, Layton & Finger, PA, counsel for the Trust, contended that the Trust has no fiduciary duty to Plaintiff or other Legacy Holders and refused to publish the Trust's revised and updated trust agreement. Specifically, the Trust argued that as it will not be making any future distributions to Legacy Holders, it is not required to disseminate the revised trust agreement.

73.    Notwithstanding, it is Plaintiff's position that the Trust is obligated to do more than disperse assets. The Trust has a duty to confirm the level of dilution is 1% and to guarantee it will not exceed 1% to any Class 19 CUSIP, both issues relevant to the MBS, whenever publicly disclosed. The Trust has never challenged Plaintiff's assertion for the past two years that it cannot authoritatively state that WMI has no assets as it is not an affiliate of WMI. If the Source is correct there will be a substantial distribution from WMI and therefore the dilution issue is of paramount importance to Class 19. Accordingly, the Trust's and its administrators' obligations to Legacy Holders continue, and this cause of action cannot be mooted by any ruling of the Supreme Court.

74.    Therefore, Plaintiff requests a declaratory judgment that defendants have fiduciary duties to Legacy Holders, and Legacy Holders have the right to view the revised trust agreement.

## TENTH CAUSE OF ACTION
## DECLARATORY JUDGMENT DISCLOSING
## WMI'S (OR ITS SUCCESSOR'S) PLACE OF INCORPORATION,
## HEADQUARTERS, AND IDENTITIES OF BOARD OF DIRECTORS, MANAGEMENT

75.     Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 74 above as if

fully set forth herein.

76.     Section 1.189 of the Plan defines WMI as the 'Reorganized Debtor'.  Section 40.4 of the

Plan provides as follows:

> "Directors of the Reorganized Debtors: On the Effective Date, the board
> of directors of each of the Reorganized Debtors shall consist of seven (7)
> persons: six (6) members selected by the Equity Committee and one (1)
> member selected by the lenders party to the Credit Facility. The initial
> directors shall be disclosed prior to the Confirmation Hearing. In the event
> that, during the period from the Confirmation Hearing up to and including
> the Effective Date, circumstances require the substitution of one (1) or
> more persons selected to serve on the boards of directors of the
> Reorganized Debtors, the Equity Committee and the lenders party to the
> Credit Facility, as the case may be, shall choose a respective substitute and
> the Debtors shall file a notice thereof with the Bankruptcy Court and, for
> purposes of section 1129 of the Bankruptcy Code, any such replacement
> person, designated in accordance with the requirements of the immediately
> preceding sentence, shall be deemed to have been selected and disclosed
> prior to the Confirmation Hearing."

To Plaintiff's knowledge, the names of the board members were not disclosed, and no

disclosures have been made respecting additions or deletions thereto.

77.     Section 40.5 of the Plan provides as follows:  "Officers of the Reorganized Debtors:  To

the extent applicable, the board of directors of the Reorganized Debtors shall elect officers

of the Reorganized Debtors as of or after the Effective Date."  To Plaintiff's knowledge,

the names of WMI's managers were not officially disclosed and the only information

Plaintiff has been able to locate about WMI's post-confirmation management and board of

directors was found in two (2) amendments to '34 Act Form S-8 filings dated March 14,

2012 and a Form Section 14A filed on March 9, 2015.  Upon information and belief, no

disclosures have been made respecting additions or deletions thereto.  All of these filings name Charles Edward Smith, Esq. as Executive Vice President, General Counsel, and Secretary.  (Mr. Smith also served as Interim Chief Executive Officer of WMIH in 2015 and is currently one of the Trust Administrators.)

78.   For the MBS to reach Mr. Cooper's hands there must exist an agreement to sell the MBS to Mr. Cooper and, therefore, someone exercising authority of WMI's board of directors and management must have negotiated and executed such an agreement.

79.   Upon information and belief, WMI no longer occupies the offices set forth in its post-confirmation '34 Act filings and the telephone number for those offices has been disconnected.  Accordingly, Mr. Smith, an attorney licensed in Washington state, is the only member of WMI's management for whom there is any publicly available contact information, and retail Legacy Holders currently have no mechanism for contacting WMI's managers or board of directors and holding them accountable and making inquiries about WMI Property.  This cause of action cannot be mooted by any ruling of the Supreme Court.

80.   Therefore, Plaintiff requests a declaratory judgment that WMI (or its successors) must disclose its place of incorporation, headquarters, and identities of its board of directors and management.

## ELEVENTH CAUSE OF ACTION
## ADJUDICATION OF OWNERSHIP OF WMI PROPERTY

81.   Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 80 above as if fully set forth herein.

82.   As set forth in the Plan, the Trust owns all interests of WMI in property except any property explicitly retained by WMI.  Accordingly, either the Trust or WMI owns the MBS and any other WMI Property.  If the MBS are property of the Trust and the Trust dissolves prior to

recognition of ownership, upon information and belief, the MBS would become WMI Property. However, if the MBS are property of the Trust and are disclosed as such prior to the Trust's dissolution, then they would probably have to be disbursed as the Trust cannot engage in any business.

83. Plaintiff and other Legacy Holders have standing to request a determination of ownership of the MBS as between WMI and the Trust because they have interests in all the WMI Property and if the Trust is the owner, it must distribute the liquidated value of the MBS immediately. This cause of action cannot be mooted by any ruling of the Supreme Court.

84. Therefore, Plaintiff requests an order of this court adjudicating ownership of the MBS and any other WMI Property.

**TWELVETH CAUSE OF ACTION**
**INTERPLEADER**

85. Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 84 above as if fully set forth herein.

86. If it cannot be determined conclusively that the Trust is not the owner of the MBS then the MBS should be interplead to this court for adjudication of ownership. This cause of action cannot be mooted by any ruling of the Supreme Court.

87. Therefore, Plaintiff requests an order directing Mr. Cooper and WMI to interplead the MBS to this court.

**THIRTEENTH CAUSE OF ACTION**
**INJUNCTION FORBIDDING USE OF THE MBS**

88. Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 87 above as if fully set forth herein.

89. Mr. Cooper has not compensated WMI, the Trust, or Legacy Holders for the MBS. Moreover, it is not established that whoever authorized transfer of the MBS to Mr. Cooper

had authority to do so.  Accordingly, Mr. Cooper should not be permitted to hold or use the MBS unless it is established that WMI owns the MBS and observed the proper formalities (e.g., authorization, shareholder approval (this would be impossible as WMI's old securities were extinguished when the Plan was confirmed) before executing the related agreement with Mr. Cooper. This cause of action cannot be mooted by any ruling of the Supreme Court.

90.   Therefore, Plaintiff requests an order, without requiring posting of a bond, enjoining Mr. Cooper, WMI, the Trust, and any of their respective affiliates, agents, or transferees from assigning, pledging, transferring, hypothecating, distributing, or selling any or all of the MBS or other WMI Property, however described, wherever residing, without leave of this court.

### FOURTEENTH CAUSE OF ACTION
### ACCOUNTING

91.   Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 90 above as if fully set forth herein.

92.   Upon information and belief, neither WMI nor Mr. Cooper has disclosed the existence, whereabouts, or value of the MBS.  This cause of action cannot be mooted by any ruling of the Supreme Court.

93.   Plaintiff requests an order for a full accounting: (a) by WMI and Mr. Cooper of the total value of the MBS, as well as full disclosure of its custodian(s) and whereabouts; and (b) of WMI Property against WMI's management and board of directors.

### FIFTEENTH CAUSE OF ACTION
### LEGAL FEES

94.   Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 93 above as if fully set forth herein.

95.     Plaintiff is entitled to legal fees from the Trust because absent the instant action: (a) Legacy Holders would not be considered beneficiaries of the Trust and would have no hope of obtaining the revised and updated trust agreement; and (b) members of Class 19 would: (i) not receive confirmation that the Trust distributed the Claim pro rata; (ii) have no hope of reimbursement for the Claim from Class 22; and (iii) receive no guarantee that no member of Class 19 would sustain more than 1% dilution from the Claim.

96.     Plaintiff is entitled to legal fees from WMI because absent Plaintiff's efforts WMI's duty under the Plan to disclose its management and board of directors would go unfulfilled, and Legacy Holders (a) would not know who is managing WMI's affairs and (b) WMI could use WMI Property with no corporate accountability to retail Legacy Holders.

97.     Wherefore, Plaintiff prays for legal fees from the Trust and WMI, jointly and severally, the greater of (a) one-third of the dilution sustained by any CUSIP in Class 19 in excess of 1% on account of the Claim,[9] and (b) the full value of Class 22's reimbursement to Class 19 whether as a result of the instant litigation or litigation subsequently brought by another Legacy Holder.  These fees are reasonable because: (1) if Plaintiff prevails thousands of Class 19 members will benefit; (2) but for the instant action, some Class 19 members could suffer 2.5% dilution rather than 1%, a burden of at least $4.32 billion, which is 2.5x more than its $1.8 billion share pursuant to the Plan; and (3) if Class 22 fully reimburses Class 19 then no member of Class 19 will suffer any dilution.

---

[9] If Series R sustained 2.5% dilution then Plaintiff's fee would be one-third of the excess 1.5% dilution.

**WHEREFORE**, Plaintiff respectfully requests judgment:

1) On Plaintiff's first cause of action, for declaratory relief, a declaratory judgment against the Trust that the Plan requires Class 22 to bear the full dilutive effect of the Claim if the Claim is upheld on appeal;

2) On Plaintiff's second cause of action, for declaratory relief, a declaratory judgment against the Trust that the Plan requires Class 22 to reimburse Class 19 for the fair market value of 1.4 million shares of reorganized WMI (approximately 120,000 shares of Mr. Cooper);

3) On Plaintiff's third cause of action, for declaratory relief, a declaratory judgment against the Trust and WMI that if Plaintiff is barred by res judicata or collateral estoppel from seeking reimbursement by Class 22 for the (a) full dilutive effect of the Claim and (b) fair market value of approximately 120,000 shares of Mr. Cooper Stock, other members of Class 19 are not (i) in privity with Plaintiff and (ii) not therefore barred from seeking such relief;

4) On Plaintiff's fourth cause of action, for declaratory relief, a declaratory judgment against the Trust and WMI that Class 19 has the right to confirmation that the Trust distributed the Claim pro rata among Class 19 CUSIPS;

5) On Plaintiff's fifth cause of action, for declaratory relief, a declaratory judgment against the Trust and WMI that no member of Class 19 may suffer more than 1% dilution from the Claim;

6) On Plaintiff's sixth cause of action, for injunctive relief, an injunction against WMI and Mr. Cooper forbidding any payment to Class 22 until the full dilutive effect of the Claim is known and Class 22 has reimbursed Class 19 for the Claim, including

any expenses (including attorneys' fees) or costs related thereto, as if the Claim had not been placed in Class 19;

7)   On Plaintiff's seventh cause of action, for an order finding unjust enrichment against the Trust for the full amount of the dilutive effect of the Claim on members of Class 19 whose dilution exceeds 1%;

8)   On Plaintiff's eighth cause of action, for an order finding unjust enrichment against the Trust for the full amount of the dilutive effect of the Claim on Class 19;

9)   On Plaintiff's ninth cause of action, for declaratory relief, a declaratory judgment against the Trust that the Trust, the Trustee, and/or the Trust Administrators were fiduciaries to Class 19 members when the Stipulation was executed, remain fiduciaries to Class 19, and must disseminate the Trust's amended and restated trust agreement;

10)   On Plaintiff's tenth cause of action, for declaratory relief, a declaratory judgment against WMI that WMI (or its successor) must disclose its place of incorporation, headquarters, and identities of the members of its board of directors and managers and whoever is managing WMI's affairs and property;

11)   On Plaintiff's eleventh cause of action, as between WMI and the Trust, adjudication of ownership of the MBS;

12)   On Plaintiff's twelfth cause of action, for an order directing Mr. Cooper and WMI to interplead the MBS and any other WMI Property in its control into this court;

13)   On Plaintiff's thirteenth cause of action, for injunctive relief, an injunction against WMI and Mr. Cooper from utilizing the MBS or any WMI Property without leave of this court;

14)      On Plaintiff's fourteenth cause of action, an order for a full accounting by WMI and Mr. Cooper of the total value of the MBS and any other WMI Property, as well as full disclosure of their custodian(s) and location(s);

15)      On Plaintiff's fifteenth cause of action, for legal fees: (a) respecting causes of action 1 through 8 herein, the monetary equivalent of the greater of: (i) one-third of the dilution sustained by any CUSIP in Class 19 in excess of 1% on account of the Claim; and (ii) the full value of Class 22's reimbursement to Class 19, plus any costs related to brining this action; and (b) respecting causes of action 9 through 15 herein, $1,295 per hour plus costs and expenses.

16)      For such other and further relief this Court deems just and proper

Dated:    New York, New York
          May 20, 2021

                            By:    _____

                                  Alice Griffin, *Pro Se*
                                  121 East 12th Street, #7C
                                  New York, New York 10003
                                  griffincounselpc@outlook.com
                                  (646) 337-3577