```
------------------------------------------------------------------  x
ALICE GRIFFIN,                                    :     Index No.1:21-cv-04554 (GHW)
                                                  :
              Plaintiff,                          :
                                                  :
          – against –                             :
                                                  :     __AMENDED COMPLAINT__
WMI LIQUIDATING TRUST[1] and                      :
MR. COOPER GROUP INC.,                            :
                                                  :
              Defendants.                         :
                                                  :
------------------------------------------------------------------  x
```

Plaintiff, Alice Griffin brings this action for declaratory, injunctive, and other relief. The allegations set forth herein are based on Plaintiff's personal knowledge and on information and belief, including information provided to Plaintiff from credible sources and her review of publicly available information. Plaintiff alleges as follows:

### Nature of the Action

1.  Plaintiff owns a right to receive: (a) a pro rata share of seventy-five percent (75%) of (i) any Liquidating Trust Interests [2] and (ii) Litigation Proceeds Interests [3] (which arise on account of her right to receive Liquidating Trust Interests) (collectively, "Legacy

---

[1] WMI Liquidating Trust (the "Trust") may be named as a defendant in the instant action because it is not a 'Released Party' under Section 1.184 of the Plan (defined herein). (The Plan and its confirmation order (the "Confirmation Order") prohibit litigation against 'Released Parties' only by a former holder of a cancelled 'Equity Interest' (as defined in Section 1.103 of the Plan) such as Plaintiff.) Plaintiff brings the instant action against the Trust (a) to enforce terms of the Plan, (b) for post-confirmation acts, and (c) on account of her Legacy Interests (defined herein), which replaced her cancelled Equity Interests. See ¶ 30 and Note 11.

[2] Pursuant to Section 1.144 of the Plan, Liquidating Trust Interests are 'IOUs' issued by the Trust to a class in the waterfall if it is anticipated that there will be sufficient assets to pay that class. Although Plaintiff did not receive any Liquidating Trust Interests (i.e., because the Trust did not have sufficient assets to reach her class) she was granted a contingent right to receive them from under the Plan.

[3] Section 1.146 of the Plan defines 'Litigation Proceeds Interests' as "[t]he interest of a holder of a Claim or Equity Interest in [recovered assets] by virtue of such holder's right to receive Liquidating Trust Interests pursuant to the Plan."

Interests") issued by the Trust, the claims adjudication entity of the former Chapter 11 debtor Washington Mutual, Inc. ("WMI") pursuant to its plan of reorganization (the "Plan"); and (b) Defendant Mr. Cooper Group Inc. ("Mr. Cooper") issued common stock ("Mr. Cooper Stock"). The aforementioned Legacy Interests were issued to Plaintiff pursuant to Section 23.1 of the Plan in exchange for her cancelled preferred Equity Interests. For two years Plaintiff has fought the Trust to prevent a post-confirmation claim of certain securities underwriters from diluting her Legacy Interests; persistently arguing that the Plan forbids any dilution of those Legacy Interests. Plaintiff's objection has been rejected by three federal courts (the "Objection Litigation") and Plaintiff is preparing a writ of certiorari for the United States Supreme Court (the "Supreme Court").

2.  Plaintiff brings the instant action at this time because she has been credibly informed that Defendant Mr. Cooper will issue and distribute equity in itself to holders of Legacy Interests ("Legacy Holders"; each, a "Legacy Holder") in consideration for assets previously belonging to WMI (beneficially or otherwise) in the possession of, and forthcoming to, Mr. Cooper. If such equity is distributed prior to final adjudication of Plaintiff's appeal the appeal will probably be mooted as any distribution may be irretrievable.

3.  Moreover, and more importantly, Mr. Cooper's intended distribution may result in excess dilution for certain Legacy Holders. Law and equity demand that this issue be adjudicated before any Mr. Cooper Stock is disbursed as such excess dilution will inflict irreparable harm.

4.  Finally, this is not a bankruptcy matter: it is a dispute about a contract created in a bankruptcy case. Plaintiff is a beneficiary of that contract and is simply enforcing her rights

2

against (a) her fiduciary under the contract, and (b) Mr. Cooper, a third-party, who may materially harm the interests of thousands of Legacy Holders.

### The Parties

5.   Plaintiff is a citizen of New York.   Defendant the Trust is a Delaware statutory trust. Defendant Mr. Cooper is a Delaware corporation with its principal place of business in Coppell, Texas.

### Jurisdiction

6.   Plaintiff brings this action under 28 U.S.C. § 1332(a)(1) as there is complete diversity between herself and both Defendants, and the amount in controversy exceeds $75,000. Venue is proper pursuant to 28 U.S.C. § 1391 (b)(3) because Mr. Cooper is subject to this court's personal jurisdiction under N.Y. C.P.L.R. § 302(1), (3)(i), and (3)(ii) due to its (a) myriad contacts with New York City, (b) involvement in interstate commerce, and (c) tortious interference with Plaintiff's contractual right to fully adjudicate her appeal and dilution limit.

7.   Mr. Cooper has more than minimal contacts with New York.   Its involvement with New York includes its transactions with New York City residents, solicitation of business from New York City residents through paid advertising, and upon information and belief, the substantial revenue Mr. Cooper derives from New York represents interstate commerce between New York and Texas, its domicile.

8.   Upon information and belief, Mr. Cooper is in possession of, and maintains control over, property previously owned by WMI[4] (beneficially or otherwise) or the Trust in which

---

[4] WMI has been dissolved.  It was a Washington state corporation and no record of it currently appears in the Washington Secretary of State's database.  On Wednesday, May 15, 2021, Plaintiff had a telephone conference with Marcos Ramos, Esq. and Cory Kandestin, Esq. of Richards, Layton & Finger, PA, counsel for the Trust.  During this conversation Mr. Kandestin stated that WMI was dissolved on the date the Plan was confirmed, i.e., February 23,

Plaintiff and thousands of Legacy Holders all over the United States and internationally have Legacy Interests.

9.    As described herein, Plaintiff has received credible information that Mr. Cooper intends to use said property to capitalize itself and will pay for said property by issuing equity in itself to Legacy Holders.

10.   If Mr. Cooper issues equity to Legacy Holders before Plaintiff (a) adjudicates the claims described herein and (b) exhausts her federal appeal, not only will her (i) federal appeal and (ii) contractual right to a 1% maximum dilution of her Legacy Interests be impaired, but the right of thousands of Legacy Holders (some of whom are located in New York) to avoid dilution (or at least limit it) will be irretrievably lost.  Upon information and belief, Mr. Cooper is poised to issue the equity and understands Plaintiff and other Legacy Holders could be injured by its actions.

11.   Accordingly, through its distribution of equity to Legacy Holders Mr. Cooper tortiously interferes with Plaintiff's right to have her claims asserted herein fully adjudicated; rights that have a direct bearing on the proportion of Mr. Cooper equity eventually allocated among Legacy Holders and other matters.

12.   Therefore, Mr. Cooper should reasonably expect its performance under said agreement to have consequences in New York and to convey general jurisdiction unrelated to its normal business of mortgage lending and servicing.

13.   In light of the foregoing, this court's exercise of general jurisdiction over Mr. Cooper comports with constitutional due process principles of fair play and substantial justice, and

---

2012.  (Plaintiff took issue with that statement for two reasons:  (1) if WMI was dissolved in 2012, it could not have been in Chapter 11 on December 19, 2019, the date WMI's bankruptcy case was closed; and (2) on March 14, 2012, the date it filed two 8-K statements under the Securities and Exchange Act ("'34 Act") reporting entity.)

Mr. Cooper's extensive contacts with New York render it unable to make a compelling

case that the presence of some other considerations would render jurisdiction of this court

unreasonable.  *See Johnson v. UBS AG*, 791 F.App'x 240, 242 (2d Cir. 2019) (quoting

*Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016); *Chloé v. Queen*

*Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 – 165 (2d Cir. 2010).

## **Background**

14.  The Plan was confirmed on February 23, 2012.  Pursuant to its terms, the Trust was formed

to adjudicate claims and distribute assets granted it under the Plan.

15.  On March 28, 2013, the Trust executed a stipulation (the "Stipulation") settling ligation

with fifteen banks who had sued WMI for indemnification under securities underwriting

agreements (the "Underwriters"). The Stipulation granted the Underwriters a $72 million

claim (the "Claim") in the preferred class of WMI's waterfall ("Class 19").

## **The Effects of the Claim**

16.  As members of Class 19 the Underwriters received (a) 1.4 million shares of common stock

in WMI Holdings Corp. ("WMIH"; now Mr. Cooper) and (b) $72 million face in Class 19

(which has a combined face of $7.5 billion).  The 1.4 million shares of WMIH common

equate to approximately 120,000 shares of Mr. Cooper Stock with an approximate market

value as of this date of $4 million.

17.  On April 22, 2019 Plaintiff's objection to the Stipulation (the "Objection") was denied by

a bench ruling of the United States Bankruptcy Court for the District of Delaware (the

"Bankruptcy Court")[5] on the basis of laches.  The United States District Court for the

District of Delaware (the "District Court") and the United States Court of Appeals for the

---

[5] The Bankruptcy Court's jurisdiction ended when WMI's Chapter 11 case closed on December 20, 2019.

Third Circuit (the "Third Circuit") affirmed the Bankruptcy Court. The jurisdiction of the three aforementioned federal courts has terminated, and none of the claims or issues underlying Plaintiff's petition before the Supreme Court are raised in the instant action.

18. As background, the Objection was based on the Plan's unambiguous language requiring claims for securities' underwriting liability be placed within common, not preferred, equity. Specifically, Section 1.153 of the Plan, entitled 'Other Subordinated Claim' ("Section 1.153"), provides that "any Claim related to the purchase or sale of an equity security that is subordinated in accordance with section 510(b) of the Bankruptcy Code shall be classified with and receive the treatment provided for the Preferred Equity Interests or Common Equity Interests, as appropriate."

19. Notwithstanding Section 1.153's language that a claim related to issuance of equity securities can be classified as either preferred or common equity, Section 1.73(b) of the Plan, entitled 'Common Equity Interest' limits Section 1.153 by requiring claims relating to issuance of equity securities be compensated with common equity and further specifies the methodology for calculating the amount of common equity. Accordingly, pursuant to Section 1.73, WMI's common equity ("Class 22"), when it voted for the Plan, agreed to accept responsibility for any claims arising from sales of WMI's equity securities.

20. In accordance with Section 1.73(b), the Trust was required to determine the number of Class 22 Legacy Interests payable to the Underwriters by dividing $72 million by the price of WMI common stock on: (a) September 26, 2008; (b) September 25, 2008; (c) December 12, 2011; or (d) a price set by the Bankruptcy Court. [6]

---

[6] Specifically, Section 1.73(b) provides that the amount of an allowed claim must be divided by one of four (4) denominators: "a Claim . . . which . . . has been subordinated to the level of Equity Interest in accordance with section 510 of the Bankruptcy Code . . . shall be determined by dividing the amount of an Allowed Claim by the per share price of WMI common stock as of either (a) the Petition Date, (b) the close of business on the day immediately

21.  Instead of complying with Section 1.73(b), the Trust gave the Underwriters Class 19 Legacy Interests, which, as previously explained, entitled them to (a) approximately 120,000 shares of Mr. Cooper Stock, and (b) a portion of Class 19's 75% share of any recovery.  (Pursuant to the Plan, Class 19 and Class 22 are *pari passu*, and Class 19 receives 75% of any recovery and Class 22 receives 25% thereof.)[7]

### The MBS

22.  In late 2019 Plaintiff received information from another Legacy Holder in communication with an employee of a major securities broker (the "Source").  The Source stated that when Plaintiff's federal appeals are finally adjudicated and the Trust dissolved,[8] Mr. Cooper will distribute Mr. Cooper Stock to Legacy Holders.  The Source stated that Defendant Mr. Cooper is in possession of well in excess of $10 billion dollars in mortgage-backed securities and/or mortgages formerly owned by WMI (the "MBS") which assets are subject to interests of Plaintiff and other Legacy Holders.

23.  In early April 2021 the Source stated that all the MBS would be given to Mr. Cooper by June 30, 2021 and that the Mr. Cooper Stock would be disbursed by various brokers.  The Source further said that Mr. Cooper was obligated to report receipt of the MBS in its'34 Act filings in the same quarter as the date of receipt but did not do so while Plaintiff's

---

preceding the Petition Date, (c) December 12, 2011, or (3) [sic] such other date as determined by the Bankruptcy Court."

[7] Plaintiff argued in the Objection Litigation that the Plan's definition of 'Preferred Equity Interest' prohibited any dilution.  As defined by Section 1.170, a 'Preferred Equity Interest' is "[a]n Equity Interest represented by an issued and outstanding share of preferred stock of WMI *prior to or on [September 26, 2008]*, including, without limitation, those certain (i) Series K Perpetual Non-Cumulative Floating Rate Preferred Stock, (ii) Series R Non-Cumulative Perpetual Convertible Preferred Stock, and (iii) the REIT Series." (Emphasis added.)  Accordingly, as the Claim was created post-confirmation and not one of the three types of securities named in Section 1.170. it was ineligible for Class 19 status.

[8] Pursuant to the Final Decree, the Trust is prohibited from dissolving until Plaintiff's appeals are exhausted and its counsel acknowledged this in emails to Plaintiff.

litigation with the Trust survived.  According to the Source, Mr. Cooper is planning to disburse the Mr. Cooper Stock regardless of the final decree of the Bankruptcy Court  dated December 20, 2019 closing WMI's chapter 11 case (the "Final Decree") which prohibits dissolving the Trust until Plaintiff's appeal is exhausted.  The Source indicated that (a) Mr. Cooper's management was very anxious about fulfilling its '34 Act regulatory reporting requirement with respect to the MBS, (b) the value of the MBS had increased by approximately 10%,[9] and (c) in addition to the Mr. Cooper Stock, Legacy Holders will contemporaneously receive a cash payout of 2.5x par.

24.     The Source further revealed that circulating within his/her enterprise was an internal memorandum listing the names of Legacy Holders, their holdings, and indicating these persons would be treated as private wealth clients rather than retail clients once they received the Mr. Cooper Stock.

### Advent of the MBS Requires Protection of Plaintiff's Legacy Holdings

25.     Given (a) his/her employer, (b) the fact that the information he/she has provided is unchanged during the more than two years that he/she has been disseminating information in connection with the matters stated herein, and (c) the potential jeopardy to his/her employment if his/her identity is discovered, Plaintiff has no reason to doubt the Source's veracity.

26.     No information about the existence or whereabouts of the MBS has been provided to Plaintiff or other retail Legacy Holders.  Retail Legacy Holders – who are entitled to 30%

---

[9] To illustrate the economic impact of the MBS on Legacy Holders, for each $10 billion recovered each Class 19 security receives par and each Class 22 security receives approximately $2.10.

of any recovery – were neither informed nor consulted about the transaction with Mr. Cooper.

27.     As disclosed during the bankruptcy case, Appaloosa Management LP ("Appaloosa") holds $850 million in Class 19 Legacy Interests and Greywolf Capital Management, LP ("Greywolf") holds approximately $875 million in Class 19 Legacy Interests.  These two funds represent 8.5% and 8.75% of the total $10 billion face, respectively.  During the case Owl Creek Asset Management, L.P., Centerbridge Partners, L.P., and Aurelius Capital Management, LP. (collectively, with Appaloosa, the "Hedge Funds") were revealed as holding substantial Class 19 Legacy Interests.

28.     It was also revealed during the bankruptcy case that the Hedge Funds negotiated the settlement with the Federal Deposit Insurance Corporation (the "FDIC") and J.P. Morgan Chase that served as the foundation for the Plan and appointed the Trustee.  Accordingly, it is Plaintiff's belief that the Hedge Funds probably negotiated the sale of the MBS to Mr. Cooper, which transaction was effected without informing Plaintiff or other similarly situated retail Legacy Holders.  If so, they know the whereabouts, character, and extent of the MBS and any other property formerly owned by WMI, beneficially or otherwise (collectively, the " Disputed Property").

29.     When Plaintiff decided to file the instant litigation she telephoned Mr. Ramos on March 1, 2021 to inquire whether his firm was authorized to accept service of process for the Trust. Mr. Ramos inquired what kind of relief Plaintiff would seek, and Plaintiff told him she would be seeking declaratory relief in this court.  He further stated that his firm was not authorized to accept service of process for the Trust.  By letter dated March 4, 2021 the Trust threatened Plaintiff with sanctions (including for its attorneys' fees) if she brought

the action.  On May 20, 2021 Plaintiff filed a complaint for relief with this court against

WMI, the Trust, and Mr. Cooper (the "Original Complaint").[10]  She served the Original

Complaint on the registered agents for those defendants'.  On May 26, 2021, the Trust

reiterated its threats and further threatened to petition the Bankruptcy Court to reopen

WMI's bankruptcy case to seek injunctive relief and sanctions against Plaintiff in that

forum.  (The March 4, 2021 and May 26, 2021 letters are attached as Exhibit A.)

30.     Specifically, the Trust contended that the Plan enjoins Plaintiff from bringing *any* litigation

against the Trust.  That is obviously incorrect because, if so, the Plan would have enjoined

Plaintiff from bringing even the Objection Litigation, and the Trust made no such defense

during that litigation.[11]  Further, the Trust argued that res judicata and collateral estoppel

bar Plaintiff's claims.  This is also untrue as, inter alia, (a) none of the relief sought herein

has been sought in any other legal proceeding, (b) the parties in the instant proceeding are

different from those in the Objection Litigation (i.e., the Underwriters – who were parties

in the Objection Litigation – are not parties to the instant action), and (c) the claims and

issues raised herein were not litigated in the Objection Litigation and did not have to be

---

[10] WMI is not a Defendant in this action.

[11] *See* Note 1, supra.  In Mr. Ramos' March 4th letter he refers to injunctions in Paragraph 56(a), Paragraph 56(b), Paragraph 58, and Paragraph 60 (the "Injunctions"), all in the Confirmation Order.  The Injunctions are attached as Exhibit B.  All of the Injunctions enjoin enforcement of released Equity Interests against Released Parties.  As set forth in Footnote 1 herein, the Trust is not a 'Released Party' under the Plan.  (*See* Exhibit B.)

As stated in Paragraph 1 herein, Plaintiff released her Equity Interests to obtain a contingent right to receive Legacy Interests.  These interests are not identical to her extinguished WMI preferred stock (i.e., WMI's cancelled preferred equities were issued by WMI prior to September 25, 2008 and the Legacy Interests were issued by WMI immediately upon confirmation.)  Therefore, the Injunctions do not bar her from suing the Trust to enforce the terms of her Legacy Interests.

Finally, and again, if Plaintiff is forbidden by the Injunctions from instituting *any* litigation against the Trust then the Objection Litigation violated the Plan, because Paragraph 56(b) prohibits persons who executed WMI's releases from litigating in *any* forum, which includes litigating in the Bankruptcy Court on a contested matter.  The Trust never alleged Plaintiff was enjoined from bringing the Objection Litigation.

litigated in those actions.[12] Plaintiff has the legal right to sue the Trust in any court of competent jurisdiction to enforce the rights granted to her under the Plan. Indeed, if she could not sue to enforce her rights then the Trust's obligations under the Plan would be illusory as a matter of law and any enforcement of such a bar by a court would violate due process.

31.    Accordingly, the instant action does not provide 'cause' under 11 U.S.C. § 350(b) to reopen WMI's bankruptcy case and, further, Plaintiff contends the Trust's real motive for petitioning the Bankruptcy Court to reopen the case is to avoid filing an answer in the instant action and submitting to this court's jurisdiction.  Doubtless the Trust will incur large legal bills in connection with its effort and will request the Bankruptcy Court to require Plaintiff to pay them as a severe sanction under Federal Rule of Civil Procedure 11.  However, there is no basis for any sanctions as: (a) there was no violation of any Plan injunction; (b) this action is not barred by res judicata or collateral estoppel; (c) there is nothing frivolous about the causes of action set forth herein; and (d) Plaintiff's motives are to protect her interests, not to vex or harass either of the Defendants.

32.    Retail Legacy Holders hold 30% of the total face of Legacy Holdings but have no legal representation in connection with their rights therein.  By filing the instant action Plaintiff attempts to afford some protection for, and information about, those interests.

---

[12] In the Objection Litigation Plaintiff sought to disallow the Claim in its entirety or to remove it from Class 19.  The instant litigation simply seeks to insure the Claim is distributed fairly.

**FIRST CAUSE OF ACTION**
**DECLARATORY JUDGMENT THAT CLASS 19 HAS**
**THE RIGHT TO CONFIRMATION THAT THE TRUST DISTRIBUTED**
**THE CLAIM PRO RATA AMONG CLASS 19 CUSIPS IN 2013**

33.     Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 32 above as if fully set forth herein.

34.     Section 1.175 of the Plan, 'Pro Rata Share', requires that the Claim be distributed among Class 19 pro rata so that the approximately one percent (1%) burden of the Claim (i.e., $72 million out of $7.5 billion total preferreds' face) be imposed proportionately among each of the three (3) types of preferred securities.

35.     There are eight (8) varieties of preferred securities with eight (8) corresponding Committee on Uniform Securities Identification Procedures ("CUSIP") numbers.  Six of the CUSIP numbers belong to the trust preferred securities ("TPS"), and the other two CUSIPs correspond to the Series R securities ("Series "R) and Series K securities ("Series K"), respectively.

36.     The Series R securities' face of $3 billion (each of the 3 million Series R securities has a $1,000 face) comprises 40% of the total preferred face of $7.5 billion, and therefore the Underwriters should have received no more than 40% of the Claim in Series R interests or $28.781 million face.

37.     The Series K securities' face of $500 million (each of the 20 million Series K securities has a $25 face) comprises 7% of the total preferred face, and therefore the Underwriters should have received no more than 7% of the Claim in Series K interests or $5.037 million face.

38.     The TPS' face of $4 billion comprises 53% of the total preferred face, and therefore the Underwriters should have received no more than 53% of the Claim in TPS interests or $38.135 million face.

39.     The six CUSIPs comprising the TPS (including their original face values) are:

| CUSIP | FACE | Percentage of TPS Face | Percentage of the Claim[13] |
|---|---|---|---|
| 93934WAA3 | $1,250,000,000 | 31.25% | 16.7% |
| 93934VAA5 | $302,300,000 | 7.56% | 4.03% |
| G9463GAA6 | $447,700,000 | 11.19% | 5.97% |
| 93935JAA1 | $500,000,000 | 12.5% | 6.67% |
| 93935RAA3 | $500,000,000 | 12.5% | 6.67% |
| 93936TAA8 | $1,000,000,000 | 25% | 13.33% |

40.     Plaintiff pointed out to the Third Circuit that there was no evidence that the Claim was allocated pro rata.  The Third Circuit refused to consider that issue because it had not been raised before the Bankruptcy Court. Plaintiff is not collaterally estopped to seek a declaratory judgment that the Plan requires pro rata allocation of the Claim among all Class 19 Legacy Interests because the issue was not litigated and its resolution was not necessary to the questions whether (a) the Claim would be disallowed or (b) if allowed, it would remain in Class 19.

41.     Contract law, equity, and good conscience require that each holder of a Class 19 interest know if its dilution exceeded 1%, and if the Trust did not apportion the Claim pro rata as required then Class 19 Legacy Holders who suffered excessive dilution are entitled to reapportionment of the Claim.  To illustrate, if the entire Claim was placed among Series R then each Series R share would lose 2.5% rather than 1%.

---

[13] Accordingly, the Underwriters should have received no more of each TPS CUSIP than the corresponding Claim allocations set forth above.

42.     If the Claim was not disbursed pro rata among all eight CUSIPs then holders of some preferred equity securities may sustain up to 250% more dilution than the 1% all preferred will suffer if the pro rata requirement is followed.  This result would be a clear violation of the Plan and grossly unfair to any Class 19 Legacy Holders whose Legacy Interests are diluted by more than 1%.

43.     Plaintiff's request for confirmation that the Claim was allocated pro rata is neither unreasonable nor oppressive. As the Trust ignored the express anti-dilution language defining Class 19 interests, Plaintiff is justifiably concerned that the Trust or Mr. Cooper will not adhere to the strict 1% dilution limit for all holders of Class 19 Legacy Interests. As set forth in Paragraph 41 herein, confirmation that the Trust distributed the Claim in accordance with the Plan's pro rata definition was not litigated and did not need to be as it had no bearing on either the validity of the Claim or whether the Claim belongs in Class 19.  Therefore, Plaintiff is not collaterally estopped to litigate the pro rata requirement. Moreover, execution of the Stipulation is the 'transaction' from which the Claim arises, but the pro rata requirement does not arise from that transaction.  Therefore, they are not the same claim for res judicata purposes.  Finally, the pro rata claim is ripe because it is the allocation in 2013 of Class 19 Legacy Interests that triggered Plaintiff's right to verification not payment on those Legacy Interests and, finally, the pro rata claim is valid regardless of the veracity or accuracy of the Source's information.

44.     Wherefore, Plaintiff requests a declaratory judgment requiring the Trust to disclose to the portion of the Claim placed in each of the Class 19 CUSIPs.

## SECOND CAUSE OF ACTION
## DECLARATORY JUDGMENT THAT NO MEMBER OF CLASS 19
## MAY SUFFER MORE THAN 1% OF DILUTION FROM THE CLAIM

45.    Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 44 above as if fully set forth herein.

46.    If the Supreme Court denies Plaintiff's certiorari petition or grants it but rules for the Trust and the Underwriters, Plaintiff will have exhausted all her appeals and the Claim will remain in Class 19.

47.    However, even if the Claim remains in Class 19 the Plan's definition of 'Pro Rata' requires distribution of the Claim according to the weights set forth in Paragraphs 36 – 39 herein which results in no more than 1% dilution for each of the three types of securities comprising Class 19.

48.    Verification that no member of Class 19 may suffer more than 1% dilution from the Claim was not litigated and did not have to be as it had no bearing on either the validity of the Claim or whether the Claim belongs in Class 19.

49.    Therefore, Plaintiff requests that this court enter an order against the Trust declaring that if the previous distribution of Class 19 interests did not comport with the definition of Pro Rata, then the Trust must replace Class 19 interests currently held by the Underwriters with all three (3) varieties of Class 19 interests in sufficient quantities of each to comply with the Pro Rata definition.

## THIRD CAUSE OF ACTION
## INJUNCTION FORBIDDING PAYMENTS
## UNTIL THE ALLOCATION OF THE CLAIM IS KNOWN

50.    Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 49 above as if fully set forth herein.

51.     If any recovery is distributed before the allocation of the Claim among Class 19 CUSIPS is ascertained and it is subsequently determined that some CUSIPs sustained excess dilution, it will be impossible to remedy the excess dilution.

52.     Accordingly, to protect all members of Class 19, no distributions on account of the MBS or any other Disputed Property should be permitted  until the allocation of the Claim among Class 19 CUSIPs is ascertained.

53.     Therefore, Plaintiff requests an order, without requiring posting of a bond, forbidding Mr. Cooper from making any distribution(s) on account of the MBS or any Disputed Property without leave of this court.

### FOURTH CAUSE OF ACTION
### UNJUST ENRICHMENT AGAINST MEMBERS OF CLASS 19
### WHOSE CUSIPS WERE NOT AMONG THOSE GIVEN TO THE UNDERWRITERS

54.     Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 53 above as if fully set forth herein.

55.     If any Class 19 Legacy Holders has sustained in excess of 1% dilution, then Class 19 Legacy Holders who have sustained less than 1% dilution will be unjustly enriched because the Claim will not have been distributed pro rata within Class 19.

56.     Plaintiff contends that the Hedge Funds must bear their proportionate share of the dilution. They own almost exclusively TPS and very few retail Legacy Holders own them.  If the Claim was put only in Series R, the Hedge Funds would have suffered no dilution and are therefore unjustly enriched.

57.     Unjust enrichment against Class 19 Legacy Holders whose CUSIPs were not among those given to the Underwriters was not litigated and did not need to be as it had no bearing on either the validity of the Claim or whether the Claim belongs in Class 19.

58.  Wherefore, Plaintiff prays for an order requiring the Trust to confirm that the Claim was distributed pro rata among Class 19 interests, and if this was not done order the Trust to redistribute the Claim pro rata among Class 19.

**FIFTH CAUSE OF ACTION**
**DECLARATORY JUDGMENT THAT THE TRUST, THE**
**TRUSTEE, AND/OR THE TRUST ADMINISTRATORS WERE FIDUCIARIES**
**TO CLASS 19 WHEN THE STIPULATION WAS EXECUTED AND THE**
**TRUST AND TRUST ADMINISTRATORS REMAIN FIDUCIARIES TO CLASS 19**

59.  Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 58 above as if fully set forth herein.

60.  Until 2020, the Trust was managed by a trustee (the "Trustee") and a trust advisory board (the "TAB") and since February 2020 it has been managed by two (2) trust administrators (the "Trust Administrators").  The Trustee was authorized to litigate and settle claims against WMI, and settlement of any claim in excess of $2 million would require approval of the TAB, and so the TAB approved the Stipulation.

61.  At the time the Stipulation was executed the Trust, the Trustee, and the TAB owed fiduciary duties to Plaintiff and other members of Class 19 as expressly set forth in the 'WMI Liquidating Trust Agreement' dated March 5, 2012.

62.  Marcos Ramos, Esq. of Richards, Layton & Finger, PA, counsel for the Trust, advised Plaintiff that the Trust has no fiduciary duty to Plaintiff or other Legacy Holders and refused to publish the Trust's revised and updated trust agreement.  Specifically, the Trust argued that as it will not be making any future distributions to Legacy Holders, it is not required to disseminate the revised trust agreement.

63.  Notwithstanding, it is Plaintiff's position that the Trust is obligated to do more than disperse assets.  The Trust has a duty to confirm the level of dilution is 1% and to guarantee it will not exceed 1% to any Class 19 CUSIP, both issues relevant to the future

disbursement of the Mr. Cooper Stock for the MBS, whenever publicly disclosed. The Trust has never challenged Plaintiff's assertion that it cannot authoritatively state that no assets formerly owned by WMI (beneficially or otherwise) exist. If the Source is correct there will be a substantial distribution and therefore the dilution issue is of paramount importance to Class 19. Accordingly, the Trust's and its administrators' obligations to Legacy Holders continue, and this cause of action cannot be mooted by any ruling of the Supreme Court.

64. Therefore, Plaintiff requests a declaratory judgment that the Trust has fiduciary duties to Legacy Holders, and Legacy Holders have the right to view the revised trust agreement.

## SIXTH CAUSE OF ACTION
## ADJUDICATION OF OWNERSHIP OF DISPUTED PROPERTY

65. Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 64 above as if fully set forth herein.

66. If the MBS are property of the Trust and are disclosed as such prior to the Trust's dissolution, then the Trust would have to liquidate and disburse the assets as the Trust cannot engage in any business.

67. Plaintiff and other Legacy Holders have standing to request a determination of who owns the MBS because they have interests in all the Disputed Property and if the Trust is the owner, it must distribute the liquidated value of the MBS immediately. This cause of action cannot be mooted by any ruling of the Supreme Court and was not litigated in the Objection Litigation.

68. Therefore, Plaintiff requests an order of this court adjudicating ownership of the MBS and any other Disputed Property.

## SEVENTH CAUSE OF ACTION
## INTERPLEADER

69.   Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 68 above as if fully set forth herein.

70.   If it cannot be determined conclusively that the Trust is not the owner of the MBS then the MBS or any other Disputed Property should be interplead to this court for adjudication of ownership because such assets do not belong to Mr. Cooper.  This cause of action cannot be mooted by any ruling of the Supreme Court and was not litigated in the Objection Litigation.

71.   Therefore, Plaintiff requests an order directing Mr. Cooper to interplead the MBS and any other Disputed Property in Mr. Cooper's custody or in its control, to this court.

## EIGHTH CAUSE OF ACTION
## INJUNCTION FORBIDDING USE OF THE MBS

72.   Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 71 above as if fully set forth herein.

73.   Mr. Cooper has not compensated Legacy Holders for the MBS.  Moreover, it is not established that whoever authorized transfer of the MBS to Mr. Cooper had authority to do so.  Accordingly, Mr. Cooper should not be permitted to hold or use the MBS unless it is established that the proper formalities (e.g., authorization, shareholder approval (this would be impossible as WMI's old securities were extinguished when the Plan was confirmed)) were observed before executing the related agreement with Mr. Cooper. This cause of action cannot be mooted by any ruling of the Supreme Court and was not litigated in the Objection Litigation.

74.   Therefore, Plaintiff requests an order, without requiring posting of a bond, enjoining Mr. Cooper from assigning, pledging, transferring, hypothecating, distributing, or selling any

or all of the MBS or other Disputed Property, however described, wherever residing, without leave of this court.

## NINTH CAUSE OF ACTION
### ACCOUNTING

75.  Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 74 above as if fully set forth herein.

76.  Upon information and belief, Mr. Cooper has not disclosed the existence, whereabouts, or value of the MBS.  Plaintiff and other Legacy Holders have the right to an accounting. This cause of action cannot be mooted by any ruling of the Supreme Court and was not litigated in the Objection Litigation.

77.  Plaintiff requests an order for a full accounting by Mr. Cooper of: (a) the MBS, as well as full disclosure of its custodian(s) and whereabouts; and (b) any Disputed Property in its custody or under its control.

## TENTH CAUSE OF ACTION
### LEGAL FEES

78.  Plaintiff repeats and realleges the allegations set forth in Paragraph 1 — 77 above as if fully set forth herein.

79.  Plaintiff is entitled to legal fees from the Trust because absent the instant action: (a) Legacy Holders would not be considered beneficiaries of the Trust and would have no hope of obtaining the revised and updated trust agreement; and (b) Class 19 Legacy Holders would: (i) not receive confirmation that the Trust distributed the Claim pro rata; and (ii) receive no guarantee that no Class 19 Legacy Holder would sustain more than 1% dilution from the Claim.

80.  Plaintiff is entitled to legal fees from Mr. Cooper because absent Plaintiff's efforts Legacy Holders may be harmed if (a) Mr. Cooper disburses the Mr. Cooper Stock before final

adjudication of the dilution issue, and (b) the Disputed Property were used with no corporate accountability to retail Legacy Holders.

81.     Wherefore, Plaintiff prays for legal fees from the Trust of one-third of the dilution sustained by any CUSIP in Class 19 in excess of 1% on account of the Claim. These fees are reasonable because (1) if Plaintiff prevails thousands of Class 19 Legacy Holders will benefit and (2) but for the instant action, some Class 19 Legacy Holders could suffer 2.5% dilution rather than 1%.

82.     Wherefore, Plaintiff prays for legal fees from Mr. Cooper because by holding the MBS with the intention of distributing Mr. Cooper Stock, Mr. Cooper may destroy Plaintiff's and other Class 19 Legacy Holders' rights to avoid excess dilution.

**WHEREFORE**, Plaintiff respectfully requests judgment:

1)     On Plaintiff's first cause of action, for declaratory relief, a declaratory judgment against the Trust that Class 19 Legacy Holders have the right to confirmation that the Trust distributed the Claim pro rata among Class 19 CUSIPS;

2)     On Plaintiff's second cause of action, for declaratory relief, a declaratory judgment against the Trust that no Class 19 Legacy Holders may suffer more than 1% dilution from the Claim;

3)     On Plaintiff's third cause of action, for injunctive relief, an injunction against Mr. Cooper forbidding any payment to Legacy Holders until the full dilutive effect of the Claim is known;

4)     On Plaintiff's fourth cause of action, for an order finding unjust enrichment against the Trust on account of any Class 19 Legacy Holders who suffered no dilution;

5)      On Plaintiff's fifth cause of action, for declaratory relief, a declaratory judgment against the Trust that the Trust, the Trustee, and/or the Trust Administrators were fiduciaries to all Legacy Holders when the Stipulation was executed, and the Trust and the Trust Administrators remain fiduciaries to all Legacy Holders, and must disseminate the Trust's amended and restated trust agreement;

6)      On Plaintiff's sixth cause of action, adjudication of ownership of the MBS and any other Disputed Property;

7)      On Plaintiff's seventh cause of action, for an order directing Mr. Cooper to interplead the MBS and any other Disputed Property in its control into this court;

8)      On Plaintiff's eighth cause of action, for injunctive relief, an injunction against Mr. Cooper from utilizing the MBS or any Disputed Property without leave of this court;

9)      On Plaintiff's ninth cause of action, an order for a full accounting by Mr. Cooper of the total value of the MBS and any other Disputed Property, as well as full disclosure of their custodian(s) and location(s);

10)     On Plaintiff's tenth cause of action, for legal fees: (a) respecting the second and fourth

causes of action, the monetary equivalent of one-third of the dilution sustained by

any CUSIP in Class 19 in excess of 1% on account of the Claim, and if there is no

such excess dilution, $1,295 per our plus costs and expenses; and (b) respecting all

other causes of action herein, $1,295 per hour plus costs and expenses; and

11)     For such other and further relief this Court deems just and proper.

Dated:     New York, New York
            June 2, 2021

                                    By:     /s/Alice Griffin_____

                                            121 East 12th Street, #7C
                                            New York, New York 10003
                                            griffincounselpc@outlook.com
                                            (646) 337-3577

**EXHIBIT A**



Marcos A. Ramos
Director
302-651-7566
Ramos@rlf.com

March 4, 2021

<u>Via Email</u>

Ms. Alice Griffin
121 East 12th Street, #7C
New York, NY 10003
griffincounselpc@outlook.com

Re:    <u>WMI Liquidating Trust</u>

Dear Ms. Griffin,

I write further to our conversation of March 1, 2021.  During that call, you asked whether I was authorized to accept service of process on behalf of the Trust in connection with a not-yet filed declaratory judgment action that you may file.  You also informed me that:

(i)      you may file the declaratory judgment action in New York;

(ii)     the substance of the declaratory judgment will be to seek relief based on your allegations that the Trust improperly resolved the Underwriters'[1] claims, including the allowance of the Underwriter's 72M Claim in Class 19;

(iii)    the relief under such action may include a request for the court to require the Trust to issue or distribute securities, or otherwise provide a requested distribution, to one or more classes of creditors and/or beneficiaries under the Plan, purportedly in conformity with the terms of the Plan; and

---

[1] Terms not otherwise defined herein shall have the meaning accorded to such terms in the *Brief of Appellee WMI Liquidating Trust* filed in the United States Court of Appeals for the Third Circuit, on September 8, 2020.

■  ■  ■

Ms. Alice Griffin
March 4, 2021
Page 2

(iv)    you also intend otherwise to rely on the Plan in connection with your claims.[2]

First, I confirm to you that I am **not** authorized to accept service of process on behalf of the Trust or the Trust Administrators.

Second, if you file the declaratory action described above (or any similar action or proceeding), you will be violating (among other things) the discharge injunction and other provisions of the Plan and Confirmation Order.  The Confirmation Order provides that:

all Entities who have held, hold or may hold Claims or any other debt or liability that is discharged or Equity Interests or other right of equity interest that is terminated or cancelled pursuant to the Plan or the Global Settlement Agreement, or who have held, hold or may hold Claims or any other debt or liability that is discharged or released . . . . are permanently enjoined, from and after the Effective Date, from (a) commencing . . . in any manner, any action or other proceeding . . . of any kind on any such Claim or other debt or liability that is discharged or Equity Interest that is terminated, cancelled, assumed or transferred pursuant to the Plan against any of the Released Parties or any of their respective assets, property or estates, . . .

Confirmation Order, ¶ 56(a).  The Confirmation Order further provides all such Entities are "permanently, forever and completely stayed, restrained, prohibited, barred and enjoined" from pursuing or taking any such actions.  Confirmation Order, ¶ 56(b); *see also* Confirmation Order ¶ 58 ("each and every Entity is permanently enjoined, barred and restrained from instituting, prosecuting, pursuing or litigating in any manner any and all claims, demands, rights, liabilities, or causes of action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, direct or derivative, whether asserted or unasserted, against any of the Released Parties, based upon, related to, or arising out of or in connection with . . . [among other things] confirmation and consummation of the Plan, . . ."); Confirmation Order ¶ 60 ("all Entities . . . who currently hold or assert . . . any Released Claims or Equity Interests against any of the Released Parties based upon, attributable to, arising out of or relating to any Claim against or Equity Interest in any of the Debtors . . . shall be, and shall be deemed to be, permanently stayed, restrained and enjoined . . .").

You allege that you were a former holder of an Equity Interest in the Debtors.  As such, the Plan and Confirmation Order enjoin you from commencing an action to, in effect, receive a further distribution on that Equity Interest.

As well, the Confirmation Order also provides that the Bankruptcy Court "shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases to the fullest extent as is legally permissible."  Confirmation Order, ¶ 83.  Similarly, the Plan provides that the Bankruptcy Court has the "exclusive jurisdiction" over any matter "arising in or

---

[2] I note that the foregoing summary is based on our limited discussion and we have not received a draft proposed complaint.

Ms. Alice Griffin
March 4, 2021
Page 3

related to the Chapter 11 Cases or the Plan" including to "enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan" and to "issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan . . ." Plan ¶¶ 38.1, 38.1(b) and 38.1(k).  Your filing of the declaratory judgment action in New York, therefore, also would violate the terms of the Plan and provide additional grounds (as described below) to seek injunctive or other relief against you.

     In addition to the matters discussed above, your proposed action is plainly inconsistent with the pendency of your appeal.  You currently have an appeal pending before the Third Circuit, and you have threatened to seek further relief from the United States Supreme Court, all for the very matters at issue under the threatened declaratory judgment action.  Your filing and/or prosecution of the declaratory judgment action would interfere with and/or be precluded by the jurisdiction of the applicable appellate court for the entirety of the time that your appeal is outstanding in any court.  *See, e.g., Thomas v. Northeastern Univ.*, 470 Fed. Appx. 70, 71 (3d Cir. 2012) (filing of appeal conferred jurisdiction on appellate court and "divested the [lower court] of its control over those aspects of the case involved in the appeal."); *see also E.E.O.C. v. Univ. of Penn.*, 850 F.2d 969, 971 (3d Cir. 1978) ("[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it.") (quotation omitted).  The filing of the proposed declaratory judgment action also would be precluded by the earlier decisions of the Bankruptcy Court, the Delaware District Court and the Third Circuit, as an impermissible attempt to relitigate matters resolved by those courts.  *See Peloro v. United States*, 488 F.3d 163, 174 (3d Cir. 2007) (issue preclusion "prevents parties from relitigating an issue that has already been actually litigated."); *Richardson v. Monaco (In re Summit Metals, Inc.)*, 477 B.R. 488, 499-500 (Bankr. D. Del. 2012) (issue and claim preclusion required dismissal of claims that were "asserted as objections during the main bankruptcy cases and explicitly rejected by the Court").

     Given the rulings by the Bankruptcy Court, the Delaware District Court and the Third Circuit, there also is not any reasonable, good faith basis on which you (as plaintiff or counsel) may file and/or prosecute the threatened declaratory judgment action.  Accordingly, this letter constitutes prior notice to you (as applicable) pursuant to Rule 11 of the Federal Rules of Civil Procedure or any similar rule as may apply.

                                        * * *

     In conclusion, the Trust advises you that, if you file the threatened declaratory injunction or any similar action, the Trust will seek appropriate relief that may include an injunction to prevent you from prosecuting any such action, as well as sanctions or costs (which may include attorneys' fees) as permitted and as may be awarded to the Trust.

                                        Very truly yours,

                                        /s/ *Marcos A. Ramos*

                                        Marcos A. Ramos



Marcos A. Ramos
Director
302-651-7566
Ramos@rlf.com

May 26, 2021

<u>**Via Email**</u>

Ms. Alice Griffin
121 East 12th Street, #7C
New York, NY 10003
griffincounselpc@outlook.com

      Re:    <u>WMI Liquidating Trust</u>

Dear Ms. Griffin,

      I write on behalf of the WMI Liquidating Trust (the "Trust"). Last week, you filed a complaint ("Complaint") against the Trust (and others) in the United States District Court for the Southern District of New York, case number 21-cv-04554-GHW. The Trust demands that you withdraw the Complaint with prejudice by no later than Tuesday, June 1, 2021. If you do not withdraw the Complaint, with prejudice by that date, the Trust will seek the imposition of sanctions against you and the assessment of damages, including under Rule 11 of the Federal Rule of Civil Procedure 11, Federal Rule of Bankruptcy Procedure 9011 and 28 U.S.C. § 1927.

      In its March 4, 2021 letter to you (attached as **Exhibit A**), the Trust advised that your then-proposed claims were plainly barred by res judicata and violated the injunctions and releases contained in the Plan and the Confirmation Order entered by the United States Bankruptcy Court for the District of Delaware. After you received our letter, the United States Court of Appeals for the Third Circuit denied your request for rehearing. The Third Circuit was the *third* court to reject your various claims against the Trust. Yet, in your Complaint, you seek to re-litigate in a different court the same claims that already have been resolved against you and that you are enjoined from bringing under the terms of the Plan. Indeed, you:

      (i)     seek relief based on your allegations that the Trust improperly resolved the Underwriters' claims, including the allowance of the Underwriter's 72M Claim in Class 19 (*see* Complaint, First through Ninth Causes of Action);

Ms. Alice Griffin
May 26, 2021
Page 2

(ii)     seek to require the Trust to issue or distribute securities, or otherwise provide a requested distribution, to one or more classes of creditors and/or beneficiaries under the Plan, purportedly in conformity with the terms of the Plan (*see* Complaint, First, Second, Fourth, Fifth, and Seventh through Ninth Causes of Action);

(iii)    seek relief precluded by (a) the Court's approval of the Stipulation and allowance of the Underwriter's 72M Claim in Class 19, (b) the Court's determination that the Stipulation was a proper exercise of the liquidating trust's obligations and not a breach of fiduciary duty, and (c) the Court's approval of the closure of the bankruptcy case, the Trust's final distribution and the Trust's winding up and cancellation (*see* Complaint, Third, Fifth, Sixth and Ninth through Fourteenth Causes of Action);

(iv)     seek relief precluded under the Plan and Confirmation Order (*see* Complaint, First through Fourteenth Causes of Action); and

(v)      seek relief that has been denied by each of the United States District Court for the District of Delaware and the Third Circuit (*see* Complaint, Fifteenth Cause of Action).

The Trust incorporates the discussion in its March 4 letter, as well as its March 5 email (attached as **Exhibit B**) regarding the same subject matters.  Plainly, the Plan, Confirmation Order, and other court orders are law of the case, collateral estoppel and res judicata, and legal bars to your Complaint.  As such, your Complaint is objectively vexatious, frivolous and sanctionable.  *See, e.g.*, Ex. A, p. 3; *Napier v. Thirty or More Unidentified Fed. Agents. Emps. or Officers*, 855 F.2d 1080, 1091 (3d Cir. 1988) (claims legally frivolous when identical to ones already adjudicated on plaintiff's behalf); *In re Olick*, 2012 WL 4239423 at *5 (3d Cir. Sept. 21, 2012) ("We see nothing amiss in the imposition of sanctions based on a violation of res judicata, nor in the procedure utilized by the Bankruptcy Court pursuant to Fed. R. Bank. P. 9011"); 28 U.S.C. § 1927.

* * *

Accordingly, the Trust demands that you withdraw the Complaint with prejudice by no later than Tuesday, June 1, 2021.  If you fail to do so, the Trust will seek sanctions and damages.  Those damages will include all attorneys' fees and costs incurred in connection with the Complaint and the Trust's efforts to enjoin you from proceeding with the Complaint, including (but not limited to) any amounts that may be required to be paid to the Office of the United States Trustee in connection with any motions to reopen the bankruptcy case and enforce terms of the Plan and Confirmation Order.

Very truly yours,

/s/ *Marcos A. Ramos*

Marcos A. Ramos

Encls.

Ms. Alice Griffin
May 26, 2021
Page 3


cc:     Brian S. Rosen, Esq.
        Cory D. Kandestin, Esq.

**<u>EXHIBIT B</u>**

55.    <u>Release and Exculpation Provisions</u>.  All release and exculpation provisions, including, but not limited to, those contained in Article XLIII of the Plan, are approved and shall be effective and binding on all Entities, to the extent provided herein.

56.    **<u>Injunctions and Stays</u>.**

a.    **<u>Injunctions on Claims</u>.  Except as otherwise expressly provided in Sections 41.6 and 41.12 of the Plan, this Order or such other order of this Court that may be applicable, all Entities who have held, hold or may hold Claims or any other debt or liability that is discharged or Equity Interests or other right of equity interest that is terminated or cancelled pursuant to the Plan or the Global Settlement Agreement, or who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 41.2 of the Plan, are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on any such Claim or other debt or liability that is discharged or Equity Interest that is terminated, cancelled, assumed or transferred pursuant to the Plan against any of the Released Parties or any of their respective assets, property or estates, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any of the Released Parties or any of their respective assets, property or estates on account of any Claim or other debt or liability that is discharged or Equity Interest that is terminated, cancelled, assumed or transferred pursuant to the Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released**

Parties or any of their respective assets, property or estates on account of any Claim or other debt or liability that is discharged or Equity Interest that is terminated, cancelled, assumed or transferred pursuant to the Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559 or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets, property or estates, with respect to any such Claim or other debt or liability that is discharged or Equity Interest that is terminated, cancelled, assumed or transferred pursuant to the Plan; provided, however, that such injunction shall not preclude the United States of America, any state or any of their respective police or regulatory agencies from enforcing their police or regulatory powers; and, provided, further, that, except in connection with a properly filed proof of Claim, the foregoing proviso does not permit the United States of America, any State or any of their respective police or regulatory agencies from obtaining any monetary recovery, including fines, restitution or forfeiture, from any of the Released Parties, including, without limitation, the Debtors, the Debtors in Possession or the Reorganized Debtors, or any of their respective assets, property or estates, with respect to any such Claim or other debt or liability that is discharged or Equity Interest or other right of equity interest that is terminated or cancelled pursuant to the Plan, including, without limitation, any monetary claim or penalty in furtherance of a police or regulatory power; and, provided, further that, subject to Section 3.8 of the Global Settlement Agreement, such injunction shall not preclude the JPMC Entities, the Receivership,

the FDIC Receiver and the FDIC Corporate from pursuing any and all claims against each other or any other defenses thereto pursuant to the Purchase and Assumption Agreement.  Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets, property and estates.

b.  <u>Injunction Related to Releases</u>.  As of the Effective Date, all Entities that hold, have held, or may hold a Released Claim, an Estate Claim, any Released Third Party Cause of Action or an Equity Interest that is released pursuant to Sections 41.5 and 41.6 of the Plan, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Released Claims, Estate Claims, Released Third Party Causes of Action or such Equity Interests: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Entity released under Sections 41.5 and 41.6 of the Plan; and (v) commencing or continuing in any manner, in any place of any judicial, arbitration or administrative proceeding in

any forum, that does not comply with or is inconsistent with the provisions of the the Plan or this Order.

57.     <u>Exculpation</u>.  The Debtors, the Debtors' officers and directors serving during the period from the Petition Date up to and including the Effective Date, the Creditors' Committee and each of its members in their capacity as members of the Creditors' Committee, the Equity Committee and each of its members in their capacity as members of the Equity Committee, and each of their respective professionals shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Chapter 11 Cases (including any actions taken by the Creditors' Committee or the Equity Committee after the Effective Date), the formulation, preparation, dissemination, implementation, confirmation or approval of the Plan or any compromises or settlements contained therein, the Disclosure Statement and the Supplemental Disclosure Statement related thereto, the Global Settlement Agreement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan and the Global Settlement Agreement; <u>provided</u>, <u>however</u>, that the foregoing provisions, set forth in Section 41.8 of the Plan, shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.  Nothing in Section 41.8 of the Plan shall prejudice the right of any of the Debtors, the Debtors' officers and directors serving during the period from the Petition Date up to and including the Effective Date, the Creditors' Committee and each of its members in their capacity as members of the Creditors' Committee, the Equity Committee and each of its members in their capacity as members of the Equity

Committee, and each of their respective professionals to assert reliance upon advice of counsel as a defense with respect to their duties and responsibilities under the Plan.

58.     **Bar Order.**  To the limited extent provided in Section 41.6 of the Plan and decretal paragraph 54 of this Order, each and every Entity is permanently enjoined, barred and restrained from instituting, prosecuting, pursuing or litigating in any manner any and all claims, demands, rights, liabilities, or causes of action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, direct or derivative, whether asserted or unasserted, against any of the Released Parties, based upon, related to, or arising out of or in connection with any of the Released Claims, the Debtors' Claims, the JPMC Claims, the FDIC Claim, the Purchase and Assumption Agreement (other than any rights or claims the JPMC Entities, the Receivership, the FDIC Receiver or the FDIC Corporate may have under the Purchase and Assumption Agreement), confirmation and consummation of the Plan, the negotiation and consummation of the Global Settlement Agreement, or any claim, act, fact, transaction, occurrence, statement or omission in connection with or alleged or that could have been alleged in the Related Actions, including, without limitation, any such claim, demand, right, liability, or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs or fees incurred arising directly or indirectly from or otherwise relating to the Related Actions, either directly or indirectly by any Person for the direct or indirect benefit of any Released Party arising from or related to the claims, acts, facts, transactions, occurrences, statements or omissions that are, could have been or may be alleged in the Related Actions or any other action brought or that might be brought by, through, on

behalf of, or for the benefit of any of the Released Parties (whether arising under federal, state or foreign law, and regardless of where asserted).

59.   Deemed Consent.  By submitting a Ballot or election form and receiving a distribution under or any benefit pursuant to this Plan and not electing to withhold consent to the releases of the applicable Released Parties and the Entities set forth in Section 41.6 of the Plan, or by order of this Court, each holder of a Claim or Equity Interest shall be deemed, to the fullest extent permitted by applicable law, to have specifically consented to the releases set forth in Section 41.6 of the Plan.

60.   **Supplemental Injunction**.  **Notwithstanding anything contained herein or in the Plan to the contrary, except to the limited extent provided in Section 41.6 of the Plan, all Entities, including Entities acting on their behalf, who currently hold or assert, have held or asserted, or may hold or assert, any Released Claims or Equity Interests against any of the Released Parties based upon, attributable to, arising out of or relating to any Claim against or Equity Interest in any of the Debtors, whenever and wherever arising or asserted, whether in the U.S. or anywhere else in the world, whether sounding in tort, contract, warranty, statute, or any other theory of law, equity or otherwise, shall be, and shall be deemed to be, permanently stayed, restrained and enjoined from taking any action against any of the Released Parties for the purpose of directly or indirectly collecting, recovering or receiving any payment or recovery with respect to any Released Claims or Equity Interests arising prior to the Effective Date (including prior to the Petition Date), including, but not limited to:**

(a)   **Commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Released Claim or Equity Interest against any of the Released Parties or the assets or property of any Released Party;**

(b)     Enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim or Equity Interest;

(c)     Creating, perfecting or enforcing any Lien of any kind against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim or Equity Interest;

(d)     Except as otherwise expressly provided in the Plan, this Order, or the Global Settlement Agreement, asserting, implementing or effectuating any setoff, right of subrogation, indemnity, contribution or recoupment of any kind against any obligation due to any of the Released Parties or against the property of any Released Party with respect to any such Released Claim or Equity Interest; and

(e)     Taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, this, or the Global Settlement Agreement relating to such Released Claim or Equity Interest;

provided, however, that the Debtors' compliance with the formal requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code and, provided, further, that the supplemental injunction provided pursuant to the terms of this Section 41.12 shall not preclude any current or former officers or directors of WMI from asserting any setoff or recoupment rights against any judgment or other obligation due to the Debtors, the Debtors' estates, or the Liquidating Trust or against the property of the Debtors or the Debtors' estates, to the extent such individuals have such rights pursuant to applicable non-bankruptcy law.

61.     Term of Existing Injunctions or Stays.  Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105, 362, or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until entry of an order in accordance with Section 41.23 of the Plan or such other Final Order of the Court; provided, however, that the terms of the Stock Trading Order